UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------X
CREDIT SUISSE SECURITIES (USA) LLC,

               Plaintiff,            <u>OPINION</u>

     - against -            06 Civ. 1993 (MGC)

RUSSELL G. HILLIARD, ELIZABETH T.
HILLIARD, KARYN HILLIARD, KARYN
HILLIARD REVOCABLE TRUST, and STUART
GILBERTSON,

               Defendants.
----------------------------------X

APPEARANCES:

       WILSON SONSINI GOODRICH & ROSATI
       Attorneys for Plaintiff
       12 E. 49th Street, 30th Floor
       New York, NY 10017

       By: Gideon A. Schor
           Michelle J. Shapiro

       BUSHELL & VALLIERE LLP
       Attorneys for Defendants
       60 E. 42nd Street
       New York, NY 10165

       By: Victor Bushell
           Cem Ozer

       BARID HOLM LLP
       Attorneys for Defendants
       1500 Woodmen Tower
       Omaha, NE 68102

       By: William G. Dittrick
           Jill Robb Ackerman
           Jennifer D. Tricker
           John A. Sharp

Dockets.Justia.com

**Cedarbaum, J.**

This diversity action was instituted for breach of contract. Defendants move, pursuant to Fed. R. Civ. P. 12(b)(2), to dismiss the action for lack of personal jurisdiction. They also move, pursuant to Fed. R. Civ. P. 12(b)(6), to dismiss the action for failure to state a claim upon which relief can be granted, and, pursuant to the Federal Arbitration Act, 9 U.S.C. § 1 et seq., to dismiss or stay the action in favor of arbitration. Alternatively, defendants move, pursuant to 28 U.S.C. § 1404(a), to transfer the action to the United States District Court for the District of Nebraska. For the following reasons, defendants' motion to dismiss for lack of personal jurisdiction is denied and their motion to transfer is granted. In view of this, I do not reach defendants' other motions.

BACKGROUND

Plaintiff, a financial services company, is a Delaware corporation with its principal place of business in New York City. When this action was commenced, all defendants were

domiciled in states other than Delaware and New York.  This
action arises out of defendants' ownership and sale of
400,000 shares of Series A Convertible Preferred Stock
issued by Charter Communications Inc. ("Charter").

In February 2005, all defendants with the exception of
Stuart Gilbertson entered into an agreement with plaintiff
("the February Agreement").  The February Agreement gave
plaintiff "the exclusive right to sell the [s]tock" from
February 28, 2005 to March 21, 2005 (LaCivita Decl., Ex. A,
¶ 1), but did not restrict "communications, sale, or any
other potential transactions between [defendant signatories]
and Charter" (La Civita Decl., Ex. A, App. I). It also gave
plaintiff a partial right of first refusal for an additional
120 days, until July 19, 2005.  (LaCivita Decl., Ex. A, ¶
1.)  The February Agreement contained a clause pursuant to
which the parties agreed to "irrevocably and unconditionally
submit to the non-exclusive jurisdiction of any State or
Federal court sitting in New York City over any suit, action
or proceeding arising out of or relating to the Agreement."
(LaCivita Decl., Ex. A, ¶ 7.)  It also contained a clause
pursuant to which the parties agreed to "irrevocably and
unconditionally waive any objection to the laying of venue
of any such suit, action or proceeding brought in any such

court and any claim that any such suit, action or proceeding brought in such a court has been brought in an inconvenient forum." (Id.)  Neither plaintiff nor any of the defendants sold the stock between February 28, 2005 and July 19, 2005, the period during which the February Agreement was in effect.

In April 2005, each defendant opened a new investment account with plaintiff by executing a Credit Suisse form entitled "New Account Form."  (Gilbertson Decl., Ex. A.) Attached to each New Account Form was a Credit Suisse form entitled "New Account Agreement," which provided in relevant part:

> 14. AGREEMENT TO ARBITRATE CONTROVERSIES:
> IT IS AGREED THAT ANY CONTROVERSY BETWEEN US ARISING OUT OF YOUR BUSINESS OR THIS AGREEMENT SHALL BE SUBMITTED TO ARBITRATION CONDUCTED BEFORE ANY NATIONAL SECURITIES EXCHANGES ON WHICH A TRANSACTION GIVING RISE TO SUCH CLAIM TOOK PLACE (AND ONLY BEFORE SUCH EXCHANGE) OR THE NATIONAL ASSOCIATION OF SECURITIES DEALERS, INC. AND IN ACCORDANCE WITH ITS RULES. ARBITRATION MUST BE COMMENCED BY SERVICE UPON THE OTHER PARTY OF A WRITTEN DEMAND FOR ARBITRATION OR A WRITTEN NOTICE OF INTENTION TO ARBITRATE.

(Gilbertson Decl., Ex. A, ¶ 14.)  Four months later, on August 19, 2005, plaintiff and defendants executed a document entitled "Trade Confirmation."  (Gilbertson Decl.,

Ex. D.)  The document describes defendants as "sellers" and plaintiff as "buyer" and purports to confirm the sale by defendant to plaintiff of 400,000 shares of Charter stock at a price of $22.4 million.  The document also lists March 31, 2005 as the "trade date."  (Id.)  Plaintiff alleges that the Trade Confirmation was a legally binding agreement. Defendants allege that they did not understand the Trade Confirmation to be a legally binding agreement but rather an expression of an intent to enter into such an agreement when certain terms were more fully delineated.

In any event, defendants sold the stock back to Charter in October 2005.

On March 10, 2006, defendants sued plaintiff in Nebraska state court, asserting several state law claims and requesting a declaratory judgment that the Trade Confirmation is unenforceable as a matter of law.  Four days later, on March 14, 2006, plaintiff filed this action for breach of contract and promissory estoppel.  Plaintiff also removed the Nebraska action from state court to the United States District Court for the District of Nebraska, and moved to dismiss the claim.

While plaintiff's motion to dismiss the Nebraska action was pending in Nebraska federal court, defendants initiated

arbitration of the claim before the National Association of Securities Dealers (NASD).  Pursuant to NASD rules, all requests to arbitrate before the NASD are processed through the New York office of the NASD Director of Arbitration. Thus, although defendants' initiating papers requested arbitration in Nebraska, defendants filed those papers in New York.  After doing so, defendants moved in Nebraska district court to compel arbitration.  Defendants then moved to dismiss the New York action, or transfer it to the United States District Court for the District of Nebraska, or compel arbitration.  I reserved decision pending the decision of the Nebraska court.

On August 3, 2006, the Nebraska court granted plaintiff's motion to dismiss the Nebraska action in favor of the New York action.  Hilliard v. Credit Suisse First Boston LLC, No. 8:06 CV 285, 2006 WL 2239014 (D.Neb. Aug. 3, 2006). The Nebraska court based its decision on the first-filed rule and did not consider whether defendants are subject to personal jurisdiction in New York.  Id.

DISCUSSION

I:  Defendants' Motion to Dismiss for Lack of Personal

Jurisdiction


Plaintiff bears the burden of establishing that this
court has personal jurisdiction over defendants.  In re
Magnetic Audiotape Antitrust Litig., 334 F.3d 204, 206 (2d
Cir. 2003).  At the pleading stage, plaintiff is required to
make only a prima facie showing.  DiStefano v. Carozzi N.
Am., Inc., 286 F.3d 81, 84 (2d Cir. 2001).  When deciding a
Rule 12(b)(2) motion, a court may "consider affidavits and
documents submitted by the parties without converting the
motion into one for summary judgment under Rule 56."  ESI,
Inc. v. Coastal Corp., 61 F. Supp. 2d 35, 50 n.54 (S.D.N.Y.
1999).  In determining whether plaintiff has met its burden,
all pleadings and affidavits are construed in the light most
favorable to plaintiff, and all doubts are resolved in
plaintiff's favor.  DiStefano, 286 F.3d at 84.

Plaintiff argues that this court has personal
jurisdiction over defendants because (i) defendants waived
objection to personal jurisdiction in New York by signing
the February Agreement; (ii) defendants "transacted

7

business" in New York within the meaning of the New York long arm statute, N.Y. C.P.L.R. § 302(a)(1); and (iii) defendants consented to personal jurisdiction in New York by filing a statement of claim with the NASD.

PERSONAL JURISDICTION UNDER THE FEBRUARY AGREEMENT

Plaintiff bases its first argument on the forum selection clause contained in the February Agreement.  That clause reads: "the Cable USA parties [i.e., all defendants with the exception of Gilbertson] and CSFB [i.e., plaintiff] each irrevocably and unconditionally submit to the non-exclusive jurisdiction of any State or Federal court sitting in New York City over any suit, action or proceeding arising out of or relating to the Agreement."  Plaintiff acknowledges that this clause applies to this action only if this action "aris[es] out of" or "relat[es] to" the February Agreement.  Plaintiff contends that this action "arises out of" and "relates to" the February Agreement because the February Agreement contemplated the sale of defendants' stock, and the sale of defendants' stock is the subject of this lawsuit.  This argument is unpersuasive.

The February Agreement authorized plaintiff to market the stock between February 28, 2005 and March 21, 2005, and conferred upon plaintiff the exclusive right to sell the stock during the same period.  It also gave plaintiff a partial right of first refusal for an additional 120 days, until July 19, 2005.  This action is based upon a stock sale that took place in October 2005.  Plaintiff acknowledges that the stock sale at issue did not violate the February Agreement.  Rather, plaintiff asserts that defendants' sale of the stock violated the August Trade Confirmation.  The February Agreement had expired before the parties executed the contract upon which plaintiff now sues.  Thus, it is difficult to conclude that this action "arises out of" or "relates to" the February Agreement.

Plaintiff relies on cases holding that "the scope of clauses similar to those at issue here is not restricted to pure breaches of the contracts containing the clause." Roby v. Corp. of Lloyd's, 996 F.2d 1353, 1361 (2d Cir. 1993). When "arising out of," "relating to," or similar words appear in a forum selection clause, such language is regularly construed to encompass securities, antitrust, and tort claims associated with the underlying contract.  See, e.g., Scherk v. Alberto-Culver Co., 417 U.S. 506, 41 L. Ed.

2d 270 (1974) (holding that a forum selection clause applicable to controversies "arising out of" a contract for the sale of a business encompassed buyer's securities fraud suit against seller); Roby v. Corp. of Lloyd's, 996 F.2d at 1361 (holding that a forum selection clause applicable to controversies arising "in connection with" a set of contracts detailing the rights and duties of investors vis-à-vis marketers encompassed investors' securities and RICO suit); Bense v. Interstate Battery System of America, 683 F.2d 718, 720 (2d Cir. 1982) (holding that a forum selection clause applicable to controversies "arising directly or indirectly" from a franchise agreement encompassed franchisee's antitrust suit against franchisor). However, the argument that a forum selection clause in one contract should be applied to a different, separately negotiated contract lacking such a clause requires a much broader reading of "arising out of" and "related to" than those cases support. Plaintiff has not cited any case in which a court has treated two separate contracts as "arising out of" or "related to" each other under a forum selection clause in only one of the contracts.

PERSONAL JURISDICTION UNDER NEW YORK'S LONG ARM STATUTE

Plaintiff's second argument is based on New York's long arm statute, N.Y. C.P.L.R. § 302(a)(1).  Under that statute, a court may exercise personal jurisdiction over an out-of-state defendant who "in person or through an agent . . . transacts any business within the state," provided that plaintiff's cause of action arises out of that business transaction.  "The question of whether an out-of-state defendant transacts business in New York is determined by considering a variety of factors, including: (i) whether the defendant has an on-going contractual relationship with a New York corporation; (ii) whether the contract was negotiated or executed in New York, and whether, after executing a contract with a New York business, the defendant has visited New York for the purpose of meeting with parties to the contract regarding the relationship; (iii) what the choice of law clause is in any such contract; and (iv) whether the contract requires [defendants] to send notices and payments into [New York] or subjects them to supervision by [a] corporation in [New York].  Although all are relevant, no one factor is dispositive.  Other factors may be considered, and the ultimate determination is based on the totality of the circumstances."  <u>Agency Rent A Car Sys.,</u>

Inc. v. Grand Rent A Car Corp., 98 F.3d 25, 29 (2d Cir. 1996) (citations omitted) (collecting and summarizing New York case law).

Plaintiff, a corporation with its principal place of business in New York, argues that defendants had an "on-going contractual relationship" with it. According to plaintiff, this relationship commenced on February 28, 2005, when the February Agreement was signed, continued through March 31, 2005, when the parties allegedly agreed to a trade involving the stock, continued through April 16, 2005, when defendants each executed a New Account Agreement, continued through August 19, 2005, when the parties executed the Trade Confirmation, until October 2005, when an attorney representing defendants allegedly communicated to plaintiff that the sale of the stock would close.

Plaintiff also contends that the contract at issue in this action, the August Trade Confirmation, was "negotiated in New York." In particular, according to plaintiff, Chris Hilliard and attorney Maria Sendra acted on defendants' behalf to negotiate the stock trade with Edward Van Tassel and Anthony LaCivita, two New York based employees of Credit Suisse.[1]  Plaintiff alleges that Hilliard and Van Tassel

---

[1] Plaintiff asserts, on information and belief, that Chris Hilliard is the son of defendants Russell and Elizabeth Hilliard and the husband of defendant Karyn Hilliard.  Maria Sendra is a partner at the San Diego

spoke on the telephone about the trade on approximately twenty-five to thirty occasions, that Hilliard and LaCivita spoke on the telephone about the trade on a number of other occasions, and that Hilliard e-mailed Van Tassel about the trade several times.  Plaintiff also alleges that Sendra negotiated the specific terms of the trade via frequent telephone calls and e-mails to Van Tassel and LaCivita.  On August 19, 2005, Sendra allegedly e-mailed the fully executed Trade Confirmation to plaintiff in New York, and on October 30, 2005, Sendra allegedly left a voicemail for LaCivita assuring LaCivita that the trade would close. According to plaintiff, the market for illiquid securities like those at issue in this case exists only in New York. In sum, plaintiff argues that defendants purposefully availed themselves of the privilege of transacting business here.

"While electronic communications, telephone calls or letters, in and of themselves, are generally not enough to establish jurisdiction, they may be sufficient if used by the defendant deliberately to project itself into business transactions occurring within New York State." Deutsche Bank Sec., Inc. v. Mont. Bd. of Investments, 21 A.D.3d 90,

---

office of Baker & McKenzie LLP.

94, 797 N.Y.S.2d 439, 443 (1st Dep't 2005) (citations omitted).  But "only in cases where the telephone call or communication clearly shows that the defendant intends to project itself into ongoing New York commerce, such as where a defendant directly conducts market activity or securities transactions in New York over the telephone, do New York courts sustain jurisdiction based on telephone calls or facsimile transmissions alone."  Kulas v. Adachi, No. 96 Civ. 6674, 1997 WL 256957, at *7 (S.D.N.Y. May 16, 1997).

Plaintiff argues that defendants' conduct evidences a level of purposeful involvement in New York business sufficient to satisfy § 302(a)(1), and that New York courts have upheld the exercise of personal jurisdiction over defendants with similar New York contacts.  See Parke-Bernet Galleries, Inc. v. Franklyn, 26 N.Y.2d 13, 18 (1970) (finding that defendant transacted business for long-arm purposes when he participated in an auction held in New York by receiving and transmitting bids over the telephone); Deutsche Bank, 21 A.D.3d at 94, 797 N.Y.S.2d at 443 (upholding exercise of personal jurisdiction over defendant where defendant's investment officer successfully negotiated the terms of a multi-million dollar bond transaction with plaintiff after initiating contact with plaintiff's New York

office over Bloomberg Messaging System); Courtroom Television Network v. Focus Media, Inc., 264 A.D.2d 351, 354, 695 N.Y.S.2d 17, 19 (1st Dep't 1999) (upholding exercise of personal jurisdiction where defendant took advantage of New York's "unique resources in the entertainment industry" by creating tapes of advertisements to be broadcast from a New York studio and sending them to New York with the intention that the performance occur in New York); Arch Specialty Ins. Co. v. Entm't Specialty Ins. Services, Inc., No. 04 Civ. 1852, 2005 WL 696897, at *2 (S.D.N.Y. Mar. 24, 2005) (exercising personal jurisdiction over defendant where defendant's agent regularly conveyed information to a New York plaintiff via e-mail and facsimile in order to obtain an insurance policy underwritten, handled, and issued in New York).

Defendants' involvement in New York commerce was less purposeful than the involvement of the Parke-Bernet, Deutsche Bank, Courtroom Television, and Arch defendants. In view of this, and because of the reluctance of the New York courts to ground personal jurisdiction on electronic communications and telephone conversations, it is a very close question whether New York's long arm statute authorizes personal jurisdiction over defendants.

PERSONAL JURISDICTION BASED ON DEFENDANTS' NASD FILING AND
CONSENT TO ARBITRATE

Plaintiff's third argument is that defendants' filing
of a Statement of Claim with the New York office of the NASD
constitutes consent to personal jurisdiction in New York
even though defendants requested that arbitration take place
in Nebraska.

Plaintiff relies on the line of cases beginning with
Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Lecopulos,
553 F.2d 842 (2d Cir. 1977).  Lecopulos, a Greek citizen and
resident, opened an account with Merrill Lynch in London.
An agreement he signed while opening the account contained
the following clause: "any controversy between us arising
out of your business or this agreement[] shall be submitted
to arbitration conducted under the provisions of the
Constitution and Rules of the Board of Governors of the New
York Stock Exchange [NYSE]."  Id. at 844 n. 1.  Although
Lecopulos dealt exclusively with Merrill Lynch's London
office and never contacted New York directly, the court
interpreted his agreement to resolve disputes by arbitration
before the NYSE as an agreement to resolve disputes by
arbitration in New York.  It held that an "agreement to

16

resolve disputes by arbitration in New York constitute[s] consent to personal jurisdiction in New York." Id. at 844.

Two judges of this court have applied and extended Lecopulos to the NASD context. In Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Noonan, No. 92 Civ. 3770, 1992 WL 196741 (S.D.N.Y. Aug. 3, 1992), defendants' account agreements contained a clause requiring arbitration of all disputes before either the NYSE, the American Stock Exchange, an arbitration facility provided by any other exchange, the NASD, or the Municipal Securities Rulemaking Board. Id. at *1. However, the provision did not specify the location at which the arbitration proceedings would actually take place. Id. In view of the fact that "the [NYSE] and the [NASD] both have their principal arbitration offices in New York City where all arbitrations are initially processed," and "Merrill Lynch has its principal place of business in New York," Judge Kram found that the contract was "akin to an arbitration agreement which states that the respondents will resolve their disputes by arbitration in New York." Id. at *3. Relying on Lecopulos, Judge Kram held that such an agreement "constitute[d] consent to personal jurisdiction in New York City." Id.

In <u>Merrill Lynch, Pierce, Fenner & Smith, Inc. v.</u>
<u>Shaddock</u>, 822 F. Supp. 125 (S.D.N.Y. 1993), defendants'
account agreements included a provision pursuant to which
the parties agreed to arbitrate all controversies before the
NYSE or NASD; however, as in <u>Noonan</u>, the provision did not
require that arbitration proceedings actually take place in
New York.  After a dispute arose between the parties,
defendants initiated arbitration by filing a Statement of
Claim with the NASD office in New York, as required by NASD
rules.  Defendants then selected the NASD regional office in
Denver as the site of the arbitration hearing.  <u>Id.</u> at 127.
Relying on <u>Lecopulos</u> and <u>Noonan</u>, Judge Connor held that
defendants had consented to personal jurisdiction in New
York by agreeing to submit to arbitration before the NASD.
<u>Id.</u> at 131.  The fact that defendants requested an out-of-
state arbitration location did not enter into the
jurisdictional analysis.

Since these cases were decided, however, the First
Department Appellate Division of the New York Supreme Court
has questioned whether filing a Statement of Claim with, and
consenting to arbitrate before, the NYSE or NASD constitutes
consent to personal jurisdiction in the courts of New York.
In <u>Merrill Lynch, Pierce, Fenner & Smith, Inc. v. McLeod</u>,

208 A.D.2d 81, 622 N.Y.S.2d 954 (1st Dep't 1995), defendant McLeod signed an account agreement with plaintiff Merrill Lynch which required that all disputes between them be submitted to arbitration before the NYSE or NASD.  When the relationship soured, McLeod filed a claim with the NYSE's New York office requesting that arbitration proceedings take place in Florida, and Merrill Lynch responded by filing suit in New York to stay arbitration.  Id. at 82.  On appeal, the First Department dismissed Merrill Lynch's suit for lack of personal jurisdiction over McLeod.  Id. at 84.

The court began its discussion by criticizing Lecopulos because the cases upon which it relied specifically designated New York as the site of the arbitration hearings, whereas the arbitration agreement signed by Lecopulos was silent as to location.  Id. at 83.  The court went on to hold that McLeod's "use of the NYSE correspondence 'facility' in New York [did not] constitute a jurisdictional choice of forum.  Rather, she exercised her option to arbitrate in Florida simply by filtering her request through an agency whose designated office for correspondence happened to be located in New York."  Id. at 84 (citation omitted); see also Painewebber, Inc. v. McAdams, 212 A.D.2d 464, 466, 626 N.Y.S.2d 198, 199 (1st Dep't 1995) ("The

mailing by [defendant] of her statement of claim to New York
reflected solely a ministerial and incidental step in the
processing of her application for arbitration in the
appropriate forum"); Koob v. IDS Fin. Services, Inc., 213
A.D.2d 26, 34, 629 N.Y.S.2d 426, 433 (1st Dep't 1995) ("It
is not enough [for purposes of establishing personal
jurisdiction] that a notice of intention to arbitrate was
filed with an organization in New York"); Merrill Lynch &
Co., Inc. v. Mathes, 212 A.D.2d 456, 622 N.Y.S.2d 952 (1st
Dep't 1995) (holding that mailing a statement of claim to
the New York office of the NYSE and obtaining a New York
attorney were insufficient to constitute purposeful activity
in New York).  Similarly, the court did not construe
McLeod's agreement to arbitrate before the NYSE or NASD as
constituting consent to personal jurisdiction in New York.

It is axiomatic that in diversity cases the issue of
personal jurisdiction is governed by the law of the forum
state.  D.H. Blair & Co., Inc. v. Gottdiener, 462 F.3d 95,
104 (2d Cir. 2006).  McLeod calls into question the
continued vitality of Lecopulos and its progeny.  At the
very least, McLeod raises a serious question about whether
defendants consented to personal jurisdiction in New York by

agreeing to arbitrate before a New York based entity and filing a Statement of Claim with that entity.

## II:  Defendants' Motion to Transfer

Because defendants have not alleged that venue is improper in the Southern District of New York, their motion to transfer must be analyzed under 28 U.S.C. § 1404(a). Pursuant to that section, "for the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."  It is well settled that § 1404(a) enables a district court to transfer an action whether or not it has personal jurisdiction over the defendants.  Alexander & Alexander, Inc. v. Donald F. Muldoon & Co., 685 F. Supp. 346, 348 (S.D.N.Y. 1988) (citing Corke v. Sameiet M.S. Song of Norway, 572 F.2d 77, 80 (2d Cir. 1978)).

The first step in a § 1404(a) analysis is to determine whether the transferee forum is one where, at the time the suit was brought, defendants were subject to personal jurisdiction and venue would have been proper.  See Volkswagen De Mexico, S.A. v. Germanischer Lloyd, 768 F.

Supp. 1023, 1028-29 (S.D.N.Y. 1991). In this action, all defendants have consented to personal jurisdiction in the District of Nebraska. Venue is proper in the District of Nebraska because a substantial part of the events giving rise to plaintiff's claim occurred there.

The next step in a § 1404(a) transfer analysis is to balance the convenience of the parties and determine whether transfer will best serve the "interest of justice." This is a matter "which is left to the sound discretion of the district court." Filmline (Cross-Country) Prods., Inc. v. United Artists Corp., 865 F.2d 513, 520 (2d Cir. 1989). Among the factors a court should consider in exercising its discretion to transfer venue are plaintiff's choice of forum, the convenience of the witnesses and parties, the location of events giving rise to the suit, the relative ease of access to sources of proof, each forum's familiarity with governing law, and trial efficiency. Giuliani, S.p.A. v. Vickers, Inc., 997 F. Supp. 501, 503 (S.D.N.Y. 1998). Transfer is often appropriate in cases in which there is a serious question as to whether the court has personal jurisdiction over defendants. See Societe Generale v. Fla. Health Sciences Ctr., Inc., No. 03 Civ. 5615, 2003 WL 22852656, at *7 (S.D.N.Y. Dec. 1, 2003).

In this case, plaintiff's choice of forum, while important, is outweighed by the serious question as to whether there is personal jurisdiction over defendants in this district.  Moreover, the NASD has already started arbitration in Nebraska.  Finally, a significant number of witnesses and documents relating to the subject matter of this lawsuit are located in Nebraska.  These factors weigh strongly in favor of transfer.

CONCLUSION

For the foregoing reasons, defendants' motion to dismiss for lack of personal jurisdiction is denied, and their motion to transfer this action to the United States District Court for the District of Nebraska is granted pursuant to 28 U.S.C. § 1404(a).

SO ORDERED.

Dated:    New York, New York
          January 3, 2007

S/_____
              MIRIAM GOLDMAN CEDARBAUM
              United States District Judge