UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------X
CREDIT SUISSE SECURITIES (USA) LLC,

                    Plaintiff,

          - against -

RUSSELL G. HILLIARD, ELIZABETH T.
HILLIARD, KARYN HILLIARD, KARYN
HILLIARD REVOCABLE TRUST, and STUART
GILBERTSON,

                    Defendants.
------------------------------------X

FILED
U.S. DISTRICT COURT
DISTRICT OF NEBRASKA

07 JAN 11  AM 11: 55

OFFICE OF THE CLERK

OPINION

06 Civ. 1993 (MGC)

APPEARANCES:

          WILSON SONSINI GOODRICH & ROSATI
          Attorneys for Plaintiff
          12 E. 49th Street, 30th Floor
          New York, NY 10017

          By:  Gideon A. Schor
               Michelle J. Shapiro

          BUSHELL & VALLIERE LLP
          Attorneys for Defendants
          60 E. 42nd Street
          New York, NY 10165

          By:  Victor Bushell
               Cem Ozer

          BARID HOLM LLP
          Attorneys for Defendants
          1500 Woodmen Tower
          Omaha, NE 68102

          By:  William G. Dittrick
               Jill Robb Ackerman
               Jennifer D. Tricker
               John A. Sharp

A TRUE COPY
J. MICHAEL McMAHON, CLERK

BY _____
       DEPUTY CLERK

RECEIVED

JAN 1 1 2007

CLERK
U.S. DISTRICT COURT
OMAHA

**Cedarbaum, J.**

This diversity action was instituted for breach of contract. Defendants move, pursuant to Fed. R. Civ. P. 12(b)(2), to dismiss the action for lack of personal jurisdiction. They also move, pursuant to Fed. R. Civ. P. 12(b)(6), to dismiss the action for failure to state a claim upon which relief can be granted, and, pursuant to the Federal Arbitration Act, 9 U.S.C. § 1 et seq., to dismiss or stay the action in favor of arbitration. Alternatively, defendants move, pursuant to 28 U.S.C. § 1404(a), to transfer the action to the United States District Court for the District of Nebraska. For the following reasons, defendants' motion to dismiss for lack of personal jurisdiction is denied and their motion to transfer is granted. In view of this, I do not reach defendants' other motions.

                         BACKGROUND

Plaintiff, a financial services company, is a Delaware corporation with its principal place of business in New York City. When this action was commenced, all defendants were

                              2

domiciled in states other than Delaware and New York. This
action arises out of defendants' ownership and sale of
400,000 shares of Series A Convertible Preferred Stock
issued by Charter Communications Inc. ("Charter").

In February 2005, all defendants with the exception of
Stuart Gilbertson entered into an agreement with plaintiff
("the February Agreement"). The February Agreement gave
plaintiff "the exclusive right to sell the [s]tock" from
February 28, 2005 to March 21, 2005 (LaCivita Decl., Ex. A,
¶ 1), but did not restrict "communications, sale, or any
other potential transactions between [defendant signatories]
and Charter" (La Civita Decl., Ex. A, App. I). It also gave
plaintiff a partial right of first refusal for an additional
120 days, until July 19, 2005. (LaCivita Decl., Ex. A, ¶
1.) The February Agreement contained a clause pursuant to
which the parties agreed to "irrevocably and unconditionally
submit to the non-exclusive jurisdiction of any State or
Federal court sitting in New York City over any suit, action
or proceeding arising out of or relating to the Agreement."
(LaCivita Decl., Ex. A, ¶ 7.) It also contained a clause
pursuant to which the parties agreed to "irrevocably and
unconditionally waive any objection to the laying of venue
of any such suit, action or proceeding brought in any such

3

court and any claim that any such suit, action or proceeding

brought in such a court has been brought in an inconvenient

forum." (Id.)   Neither plaintiff nor any of the defendants

sold the stock between February 28, 2005 and July 19, 2005,

the period during which the February Agreement was in

effect.

In April 2005, each defendant opened a new investment

account with plaintiff by executing a Credit Suisse form

entitled "New Account Form."  (Gilbertson Decl., Ex. A.)

Attached to each New Account Form was a Credit Suisse form

entitled "New Account Agreement," which provided in relevant

part:

> 14.  AGREEMENT TO ARBITRATE CONTROVERSIES:
> IT  IS  AGREED  THAT  ANY  CONTROVERSY  BETWEEN  US
> ARISING  OUT  OF  YOUR  BUSINESS  OR  THIS  AGREEMENT
> SHALL BE SUBMITTED TO ARBITRATION CONDUCTED BEFORE
> ANY  NATIONAL  SECURITIES  EXCHANGES  ON  WHICH  A
> TRANSACTION GIVING RISE TO SUCH CLAIM TOOK PLACE
> (AND  ONLY  BEFORE  SUCH  EXCHANGE)  OR  THE  NATIONAL
> ASSOCIATION  OF  SECURITIES  DEALERS,  INC.  AND  IN
> ACCORDANCE  WITH  ITS  RULES.  ARBITRATION  MUST  BE
> COMMENCED  BY  SERVICE  UPON  THE  OTHER  PARTY  OF  A
> WRITTEN DEMAND FOR ARBITRATION OR A WRITTEN NOTICE
> OF INTENTION TO ARBITRATE.

(Gilbertson Decl., Ex. A, ¶ 14.)   Four months later, on

August 19, 2005, plaintiff and defendants executed a

document entitled "Trade Confirmation."   (Gilbertson Decl.,

4

Ex. D.)  The document describes defendants as "sellers" and
plaintiff as "buyer" and purports to confirm the sale by
defendant to plaintiff of 400,000 shares of Charter stock at
a price of $22.4 million.  The document also lists March 31,
2005 as the "trade date."  (Id.)  Plaintiff alleges that the
Trade Confirmation was a legally binding agreement.
Defendants allege that they did not understand the Trade
Confirmation to be a legally binding agreement but rather an
expression of an intent to enter into such an agreement when
certain terms were more fully delineated.

In any event, defendants sold the stock back to Charter
in October 2005.

On March 10, 2006, defendants sued plaintiff in
Nebraska state court, asserting several state law claims and
requesting a declaratory judgment that the Trade
Confirmation is unenforceable as a matter of law.  Four days
later, on March 14, 2006, plaintiff filed this action for
breach of contract and promissory estoppel.  Plaintiff also
removed the Nebraska action from state court to the United
States District Court for the District of Nebraska, and
moved to dismiss the claim.

While plaintiff's motion to dismiss the Nebraska action
was pending in Nebraska federal court, defendants initiated

5

arbitration of the claim before the National Association of Securities Dealers (NASD). Pursuant to NASD rules, all requests to arbitrate before the NASD are processed through the New York office of the NASD Director of Arbitration. Thus, although defendants' initiating papers requested arbitration in Nebraska, defendants filed those papers in New York. After doing so, defendants moved in Nebraska district court to compel arbitration. Defendants then moved to dismiss the New York action, or transfer it to the United States District Court for the District of Nebraska, or compel arbitration. I reserved decision pending the decision of the Nebraska court.

On August 3, 2006, the Nebraska court granted plaintiff's motion to dismiss the Nebraska action in favor of the New York action. Hilliard v. Credit Suisse First Boston LLC, No. 8:06 CV 285, 2006 WL 2239014 (D.Neb. Aug. 3, 2006). The Nebraska court based its decision on the first-filed rule and did not consider whether defendants are subject to personal jurisdiction in New York. Id.

DISCUSSION

I:  Defendants' Motion to Dismiss for Lack of Personal
Jurisdiction


Plaintiff bears the burden of establishing that this

court has personal jurisdiction over defendants.  In re

Magnetic Audiotape Antitrust Litig., 334 F.3d 204, 206 (2d

Cir. 2003).  At the pleading stage, plaintiff is required to

make only a prima facie showing.  DiStefano v. Carozzi N.

Am., Inc., 286 F.3d 81, 84 (2d Cir. 2001).  When deciding a

Rule 12(b)(2) motion, a court may "consider affidavits and

documents submitted by the parties without converting the

motion into one for summary judgment under Rule 56."  ESI,

Inc. v. Coastal Corp., 61 F. Supp. 2d 35, 50 n.54 (S.D.N.Y.

1999).  In determining whether plaintiff has met its burden,

all pleadings and affidavits are construed in the light most

favorable to plaintiff, and all doubts are resolved in

plaintiff's favor.  DiStefano, 286 F.3d at 84.

Plaintiff argues that this court has personal

jurisdiction over defendants because (i) defendants waived

objection to personal jurisdiction in New York by signing

the February Agreement; (ii) defendants "transacted

7

business" in New York within the meaning of the New York
long arm statute, N.Y. C.P.L.R. § 302(a)(1); and (iii)
defendants consented to personal jurisdiction in New York by
filing a statement of claim with the NASD.

PERSONAL JURISDICTION UNDER THE FEBRUARY AGREEMENT

Plaintiff bases its first argument on the forum
selection clause contained in the February Agreement. That
clause reads: "the Cable USA parties [i.e., all defendants
with the exception of Gilbertson] and CSFB [i.e., plaintiff]
each irrevocably and unconditionally submit to the non-
exclusive jurisdiction of any State or Federal court sitting
in New York City over any suit, action or proceeding arising
out of or relating to the Agreement." Plaintiff
acknowledges that this clause applies to this action only if
this action "aris[es] out of" or "relat[es] to" the February
Agreement. Plaintiff contends that this action "arises out
of" and "relates to" the February Agreement because the
February Agreement contemplated the sale of defendants'
stock, and the sale of defendants' stock is the subject of
this lawsuit. This argument is unpersuasive.

8

The February Agreement authorized plaintiff to market
the stock between February 28, 2005 and March 21, 2005, and
conferred upon plaintiff the exclusive right to sell the
stock during the same period. It also gave plaintiff a
partial right of first refusal for an additional 120 days,
until July 19, 2005. This action is based upon a stock sale
that took place in October 2005. Plaintiff acknowledges
that the stock sale at issue did not violate the February
Agreement. Rather, plaintiff asserts that defendants' sale
of the stock violated the August Trade Confirmation. The
February Agreement had expired before the parties executed
the contract upon which plaintiff now sues. Thus, it is
difficult to conclude that this action "arises out of" or
"relates to" the February Agreement.

Plaintiff relies on cases holding that "the scope of
clauses similar to those at issue here is not restricted to
pure breaches of the contracts containing the clause." Roby
v. Corp. of Lloyd's, 996 F.2d 1353, 1361 (2d Cir. 1993).
When "arising out of," "relating to," or similar words
appear in a forum selection clause, such language is
regularly construed to encompass securities, antitrust, and
tort claims associated with the underlying contract. See,
e.g., Scherk v. Alberto-Culver Co., 417 U.S. 506, 41 L. Ed.

9

2d 270 (1974) (holding that a forum selection clause
applicable to controversies "arising out of" a contract for
the sale of a business encompassed buyer's securities fraud
suit against seller); Roby v. Corp. of Lloyd's, 996 F.2d at
1361 (holding that a forum selection clause applicable to
controversies arising "in connection with" a set of
contracts detailing the rights and duties of investors vis-
à-vis marketers encompassed investors' securities and RICO
suit); Bense v. Interstate Battery System of America, 683
F.2d 718, 720 (2d Cir. 1982) (holding that a forum selection
clause applicable to controversies "arising directly or
indirectly" from a franchise agreement encompassed
franchisee's antitrust suit against franchisor). However,
the argument that a forum selection clause in one contract
should be applied to a different, separately negotiated
contract lacking such a clause requires a much broader
reading of "arising out of" and "related to" than those
cases support. Plaintiff has not cited any case in which a
court has treated two separate contracts as "arising out of"
or "related to" each other under a forum selection clause in
only one of the contracts.

PERSONAL JURISDICTION UNDER NEW YORK'S LONG ARM STATUTE

Plaintiff's second argument is based on New York's long arm statute, N.Y. C.P.L.R. § 302(a)(1). Under that statute, a court may exercise personal jurisdiction over an out-of-state defendant who "in person or through an agent . . . transacts any business within the state," provided that plaintiff's cause of action arises out of that business transaction. "The question of whether an out-of-state defendant transacts business in New York is determined by considering a variety of factors, including: (i) whether the defendant has an on-going contractual relationship with a New York corporation; (ii) whether the contract was negotiated or executed in New York, and whether, after executing a contract with a New York business, the defendant has visited New York for the purpose of meeting with parties to the contract regarding the relationship; (iii) what the choice of law clause is in any such contract; and (iv) whether the contract requires [defendants] to send notices and payments into [New York] or subjects them to supervision by [a] corporation in [New York]. Although all are relevant, no one factor is dispositive. Other factors may be considered, and the ultimate determination is based on the totality of the circumstances." Agency Rent A Car Sys.,

11

Inc. v. Grand Rent A Car Corp., 98 F.3d 25, 29 (2d Cir.
1996) (citations omitted) (collecting and summarizing New
York case law).

Plaintiff, a corporation with its principal place of
business in New York, argues that defendants had an "on-
going contractual relationship" with it.  According to
plaintiff, this relationship commenced on February 28, 2005,
when the February Agreement was signed, continued through
March 31, 2005, when the parties allegedly agreed to a trade
involving the stock, continued through April 16, 2005, when
defendants each executed a New Account Agreement, continued
through August 19, 2005, when the parties executed the Trade
Confirmation, until October 2005, when an attorney
representing defendants allegedly communicated to plaintiff
that the sale of the stock would close.

Plaintiff also contends that the contract at issue in
this action, the August Trade Confirmation, was "negotiated
in New York."  In particular, according to plaintiff, Chris
Hilliard and attorney Maria Sendra acted on defendants'
behalf to negotiate the stock trade with Edward Van Tassel
and Anthony LaCivita, two New York based employees of Credit
Suisse.[1]  Plaintiff alleges that Hilliard and Van Tassel

---

[1] Plaintiff asserts, on information and belief, that Chris Hilliard is
the son of defendants Russell and Elizabeth Hilliard and the husband of
defendant Karyn Hilliard.   Maria Sendra is a partner at the San Diego

spoke on the telephone about the trade on approximately
twenty-five to thirty occasions, that Hilliard and LaCivita
spoke on the telephone about the trade on a number of other
occasions, and that Hilliard e-mailed Van Tassel about the
trade several times.  Plaintiff also alleges that Sendra
negotiated the specific terms of the trade via frequent
telephone calls and e-mails to Van Tassel and LaCivita.  On
August 19, 2005, Sendra allegedly e-mailed the fully
executed Trade Confirmation to plaintiff in New York, and on
October 30, 2005, Sendra allegedly left a voicemail for
LaCivita assuring LaCivita that the trade would close.
According to plaintiff, the market for illiquid securities
like those at issue in this case exists only in New York.
In sum, plaintiff argues that defendants purposefully
availed themselves of the privilege of transacting business
here.

     "While electronic communications, telephone calls or
letters, in and of themselves, are generally not enough to
establish jurisdiction, they may be sufficient if used by
the defendant deliberately to project itself into business
transactions occurring within New York State."  Deutsche
Bank Sec., Inc. v. Mont. Bd. of Investments, 21 A.D.3d 90,

office of Baker & McKenzie LLP.

13

94, 797 N.Y.S.2d 439, 443 (1st Dep't 2005) (citations
omitted).  But "only in cases where the telephone call or
communication clearly shows that the defendant intends to
project itself into ongoing New York commerce, such as where
a defendant directly conducts market activity or securities
transactions in New York over the telephone, do New York
courts sustain jurisdiction based on telephone calls or
facsimile transmissions alone."  Kulas v. Adachi, No. 96
Civ. 6674, 1997 WL 256957, at *7 (S.D.N.Y. May 16, 1997).

     Plaintiff argues that defendants' conduct evidences a
level of purposeful involvement in New York business
sufficient to satisfy § 302(a)(1), and that New York courts
have upheld the exercise of personal jurisdiction over
defendants with similar New York contacts.  See Parke-Bernet
Galleries, Inc. v. Franklyn, 26 N.Y.2d 13, 18 (1970)
(finding that defendant transacted business for long-arm
purposes when he participated in an auction held in New York
by receiving and transmitting bids over the telephone);
Deutsche Bank, 21 A.D.3d at 94, 797 N.Y.S.2d at 443
(upholding exercise of personal jurisdiction over defendant
where defendant's investment officer successfully negotiated
the terms of a multi-million dollar bond transaction with
plaintiff after initiating contact with plaintiff's New York

office over Bloomberg Messaging System); Courtroom
Television Network v. Focus Media, Inc., 264 A.D.2d 351,
354, 695 N.Y.S.2d 17, 19 (1st Dep't 1999) (upholding
exercise of personal jurisdiction where defendant took
advantage of New York's "unique resources in the
entertainment industry" by creating tapes of advertisements
to be broadcast from a New York studio and sending them to
New York with the intention that the performance occur in
New York); Arch Specialty Ins. Co. v. Entm't Specialty Ins.
Services, Inc., No. 04 Civ. 1852, 2005 WL 696897, at *2
(S.D.N.Y. Mar. 24, 2005) (exercising personal jurisdiction
over defendant where defendant's agent regularly conveyed
information to a New York plaintiff via e-mail and facsimile
in order to obtain an insurance policy underwritten,
handled, and issued in New York).

Defendants' involvement in New York commerce was less
purposeful than the involvement of the Parke-Bernet,
Deutsche Bank, Courtroom Television, and Arch defendants.
In view of this, and because of the reluctance of the New
York courts to ground personal jurisdiction on electronic
communications and telephone conversations, it is a very
close question whether New York's long arm statute
authorizes personal jurisdiction over defendants.

15

PERSONAL JURISDICTION BASED ON DEFENDANTS' NASD FILING AND
CONSENT TO ARBITRATE

Plaintiff's third argument is that defendants' filing
of a Statement of Claim with the New York office of the NASD
constitutes consent to personal jurisdiction in New York
even though defendants requested that arbitration take place
in Nebraska.

Plaintiff relies on the line of cases beginning with
Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Lecopulos,
553 F.2d 842 (2d Cir. 1977). Lecopulos, a Greek citizen and
resident, opened an account with Merrill Lynch in London.
An agreement he signed while opening the account contained
the following clause: "any controversy between us arising
out of your business or this agreement[] shall be submitted
to arbitration conducted under the provisions of the
Constitution and Rules of the Board of Governors of the New
York Stock Exchange [NYSE]." Id. at 844 n. 1. Although
Lecopulos dealt exclusively with Merrill Lynch's London
office and never contacted New York directly, the court
interpreted his agreement to resolve disputes by arbitration
before the NYSE as an agreement to resolve disputes by
arbitration in New York. It held that an "agreement to

resolve disputes by arbitration in New York constitute[s]

consent to personal jurisdiction in New York." Id. at 844.

Two judges of this court have applied and extended

Lecopulos to the NASD context. In Merrill Lynch, Pierce,

Fenner & Smith, Inc. v. Noonan, No. 92 Civ. 3770, 1992 WL

196741 (S.D.N.Y. Aug. 3, 1992), defendants' account

agreements contained a clause requiring arbitration of all

disputes before either the NYSE, the American Stock

Exchange, an arbitration facility provided by any other

exchange, the NASD, or the Municipal Securities Rulemaking

Board. Id. at *1. However, the provision did not specify

the location at which the arbitration proceedings would

actually take place. Id. In view of the fact that "the

[NYSE] and the [NASD] both have their principal arbitration

offices in New York City where all arbitrations are

initially processed," and "Merrill Lynch has its principal

place of business in New York," Judge Kram found that the

contract was "akin to an arbitration agreement which states

that the respondents will resolve their disputes by

arbitration in New York." Id. at *3. Relying on Lecopulos,

Judge Kram held that such an agreement "constitute[d]

consent to personal jurisdiction in New York City." Id.

17

In Merrill Lynch, Pierce, Fenner & Smith, Inc. v.

Shaddock, 822 F. Supp. 125 (S.D.N.Y. 1993), defendants'

account agreements included a provision pursuant to which

the parties agreed to arbitrate all controversies before the

NYSE or NASD; however, as in Noonan, the provision did not

require that arbitration proceedings actually take place in

New York. After a dispute arose between the parties,

defendants initiated arbitration by filing a Statement of

Claim with the NASD office in New York, as required by NASD

rules. Defendants then selected the NASD regional office in

Denver as the site of the arbitration hearing. Id. at 127.

Relying on Lecopulos and Noonan, Judge Connor held that

defendants had consented to personal jurisdiction in New

York by agreeing to submit to arbitration before the NASD.

Id. at 131. The fact that defendants requested an out-of-

state arbitration location did not enter into the

jurisdictional analysis.

Since these cases were decided, however, the First

Department Appellate Division of the New York Supreme Court

has questioned whether filing a Statement of Claim with, and

consenting to arbitrate before, the NYSE or NASD constitutes

consent to personal jurisdiction in the courts of New York.

In Merrill Lynch, Pierce, Fenner & Smith, Inc. v. McLeod,

18

208 A.D.2d 81, 622 N.Y.S.2d 954 (1st Dep't 1995), defendant McLeod signed an account agreement with plaintiff Merrill Lynch which required that all disputes between them be submitted to arbitration before the NYSE or NASD. When the relationship soured, McLeod filed a claim with the NYSE's New York office requesting that arbitration proceedings take place in Florida, and Merrill Lynch responded by filing suit in New York to stay arbitration. Id. at 82. On appeal, the First Department dismissed Merrill Lynch's suit for lack of personal jurisdiction over McLeod. Id. at 84.

The court began its discussion by criticizing Lecopulos because the cases upon which it relied specifically designated New York as the site of the arbitration hearings, whereas the arbitration agreement signed by Lecopulos was silent as to location. Id. at 83. The court went on to hold that McLeod's "use of the NYSE correspondence 'facility' in New York [did not] constitute a jurisdictional choice of forum. Rather, she exercised her option to arbitrate in Florida simply by filtering her request through an agency whose designated office for correspondence happened to be located in New York." Id. at 84 (citation omitted); see also Painewebber, Inc. v. McAdams, 212 A.D.2d 464, 466, 626 N.Y.S.2d 198, 199 (1st Dep't 1995) ("The

mailing by [defendant] of her statement of claim to New York
reflected solely a ministerial and incidental step in the
processing of her application for arbitration in the
appropriate forum"); Koob v. IDS Fin. Services, Inc., 213
A.D.2d 26, 34, 629 N.Y.S.2d 426, 433 (1st Dep't 1995) ("It
is not enough [for purposes of establishing personal
jurisdiction] that a notice of intention to arbitrate was
filed with an organization in New York"); Merrill Lynch &
Co., Inc. v. Mathes, 212 A.D.2d 456, 622 N.Y.S.2d 952 (1st
Dep't 1995) (holding that mailing a statement of claim to
the New York office of the NYSE and obtaining a New York
attorney were insufficient to constitute purposeful activity
in New York). Similarly, the court did not construe
McLeod's agreement to arbitrate before the NYSE or NASD as
constituting consent to personal jurisdiction in New York.

It is axiomatic that in diversity cases the issue of
personal jurisdiction is governed by the law of the forum
state. D.H. Blair & Co., Inc. v. Gottdiener, 462 F.3d 95,
104 (2d Cir. 2006). McLeod calls into question the
continued vitality of Lecopulos and its progeny. At the
very least, McLeod raises a serious question about whether
defendants consented to personal jurisdiction in New York by

20

agreeing to arbitrate before a New York based entity and filing a Statement of Claim with that entity.

II: Defendants' Motion to Transfer

Because defendants have not alleged that venue is improper in the Southern District of New York, their motion to transfer must be analyzed under 28 U.S.C. § 1404(a). Pursuant to that section, "for the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." It is well settled that § 1404(a) enables a district court to transfer an action whether or not it has personal jurisdiction over the defendants. Alexander & Alexander, Inc. v. Donald F. Muldoon & Co., 685 F. Supp. 346, 348 (S.D.N.Y. 1988) (citing Corke v. Sameiet M.S. Song of Norway, 572 F.2d 77, 80 (2d Cir. 1978)).

The first step in a § 1404(a) analysis is to determine whether the transferee forum is one where, at the time the suit was brought, defendants were subject to personal jurisdiction and venue would have been proper. See Volkswagen De Mexico, S.A. v. Germanischer Lloyd, 768 F.

Supp. 1023, 1028-29 (S.D.N.Y. 1991). In this action, all defendants have consented to personal jurisdiction in the District of Nebraska. Venue is proper in the District of Nebraska because a substantial part of the events giving rise to plaintiff's claim occurred there.

The next step in a § 1404(a) transfer analysis is to balance the convenience of the parties and determine whether transfer will best serve the "interest of justice." This is a matter "which is left to the sound discretion of the district court." Filmline (Cross-Country) Prods., Inc. v. United Artists Corp., 865 F.2d 513, 520 (2d Cir. 1989). Among the factors a court should consider in exercising its discretion to transfer venue are plaintiff's choice of forum, the convenience of the witnesses and parties, the location of events giving rise to the suit, the relative ease of access to sources of proof, each forum's familiarity with governing law, and trial efficiency. Giuliani, S.p.A. v. Vickers, Inc., 997 F. Supp. 501, 503 (S.D.N.Y. 1998). Transfer is often appropriate in cases in which there is a serious question as to whether the court has personal jurisdiction over defendants. See Societe Generale v. Fla. Health Sciences Ctr., Inc., No. 03 Civ. 5615, 2003 WL 22852656, at *7 (S.D.N.Y. Dec. 1, 2003).

In this case, plaintiff's choice of forum, while important, is outweighed by the serious question as to whether there is personal jurisdiction over defendants in this district.  Moreover, the NASD has already started arbitration in Nebraska.  Finally, a significant number of witnesses and documents relating to the subject matter of this lawsuit are located in Nebraska.  These factors weigh strongly in favor of transfer.

CONCLUSION

For the foregoing reasons, defendants' motion to dismiss for lack of personal jurisdiction is denied, and their motion to transfer this action to the United States District Court for the District of Nebraska is granted pursuant to 28 U.S.C. § 1404(a).

SO ORDERED.

Dated:    New York, New York
          January 3, 2007

S/_____
          MIRIAM GOLDMAN CEDARBAUM
          United States District Judge