## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| CREDIT SUISSE SECURITIES (USA) LLC, | ) ) ) | |
| Plaintiff, | ) ) | |
| vs. | ) ) | 8:07CV17 |
| RUSSELL G. HILLIARD, ELIZABETH T. HILLIARD, KARYN HILLIARD, KARYN HILLIARD REVOCABLE TRUST and STUART GILBERTSON, | ) ) ) ) ) | ORDER |
| Defendants. | ) ) | |

This matter is before the court on Defendants' Motion to Compel Arbitration [14] and Defendants' Motion to Compel Rule 26(a) Disclosures [50].  Oral argument was held on March 19, 2007, the transcript of which was filed March 24, 2007 [70].  The defendants (together, "Hilliards") have complied with NECivR 7.1(i).

For the reasons discussed below, I find that both of the defendants' motions should be granted.

### I.  FACTUAL AND PROCEDURAL BACKGROUND

The events underlying this litigation were summarized by the Hon. Miriam Goldman Cedarbaum in her January 3, 2007 order [39] transferring this case to the District of Nebraska district pursuant to 28 U.S.C. § 1404(a):

> [T]his action arises out of defendants' [Hilliards'] ownership and sale of 400,000 shares of Series A Convertible Preferred Stock issued by Charter Communications Inc. ("Charter").

In February 2005, all defendants with the exception of Stuart Gilbertson entered into an agreement with plaintiff ("the February Agreement"). The February Agreement gave Credit Suisse "the exclusive right to sell the [s]tock" from February 28, 2005 to March 21, 2005, but did not restrict "communications, sale, or any other potential transactions between [defendant signatories] and Charter." It also gave [Credit Suisse] a partial right of first refusal for an additional 120 days until July 19, 2005. The February Agreement contained a clause pursuant to which the parties agreed to "irrevocably and unconditionally submit to the non-exclusive jurisdiction of any State or Federal court sitting in New York City over any suit, action or proceeding arising out of or relating to the Agreement." It also contained a clause pursuant to which the parties agreed to "irrevocably and unconditionally waive any objection to the laying of venue of any such suit, action or proceeding brought in any such court and any claim that any such suit, action or proceeding brought in such a court has been brought in an inconvenient forum." Neither plaintiff nor any of the defendants sold the stock between February 28, 2005 and July 19, 2005, the period during which the February agreement was in effect.

In April 2005, each defendant opened a new investment account with plaintiff by executing a Credit Suisse form entitled "New Account Form." Attached to each New Account Form was a Credit Suisse form entitled "New Account Agreement," which provided in relevant part:

> 14.   AGREEMENT TO ARBITRATE CONTROVERSIES:
> IT IS AGREED THAT ANY CONTROVERSY BETWEEN US ARISING OUT OF YOUR BUSINESS OR THIS AGREEMENT SHALL BE SUBMITTED TO ARBITRATION CONDUCTED BEFORE ANY NATIONAL SECURITIES EXCHANGES ON WHICH A TRANSACTION GIVING RISE TO SUCH CLAIM TOOK PLACE (AND ONLY BEFORE SUCH EXCHANGE) OR THE NATIONAL ASSOCIATION OF SECURITIES DEALERS, INC. AND IN ACCORDANCE WITH ITS RULES. ARBITRATION MUST BE COMMENCED BY SERVICE UPON THE OTHER PARTY OF A WRITTEN DEMAND FOR ARBITRATION OR A WRITTEN NOTICE OF INTENTION TO ARBITRATE.

Four months later, on August 19, 2005, plaintiff and defendants executed a document entitled "Trade Confirmation." The document describes defendants as "sellers" and plaintiff as "buyer" and purports to confirm the sale by defendants to plaintiff of 400,000 shares of Charter stock at a price of $22.4

million. The document also lists March 31, 2005 as the "trade date." plaintiff alleges that the Trade Confirmation was a legally binding agreement. defendants allege that they did not understand the Trade Confirmation to be a legally binding agreement but rather as an expression of an intent to enter into such an agreement when certain terms were more fully delineated.

In any event, defendants sold the stock back to Charter in October 2005.

On March 10, 2006, defendants sued plaintiff in Nebraska state court, asserting several state law claims and requesting a declaratory judgment that the Trade Confirmation is unenforceable as a matter of law. Four days later, on March 14, 2006, plaintiff filed this action for breach of contract and promissory estoppel. plaintiff also removed the Nebraska action[1] from state court to the United States District Court for the District of Nebraska, and moved to dismiss the claim.

While plaintiff's motion to dismiss the Nebraska action was pending in Nebraska federal court, defendants initiated arbitration of the claim before the National Association of Securities Dealers (NASD).[2] Pursuant to NASD rules, all requests to arbitrate before the NASD are processed through the New York office of the NASD Director of Arbitration. Thus, although defendants' initiating papers requested arbitration in Nebraska, defendants filed those papers in New York. After doing so, defendants moved in Nebraska district court to compel arbitration. defendants then moved to dismiss the New York action, or transfer it to the United States District Court for the District of Nebraska, or compel arbitration. I reserved decision pending the decision of the Nebraska court.[3]

---

[1]*Hilliard v. Credit Suisse*, 8:06CV285, filed in the District Court of Douglas County, Nebraska on or about March 10, 2006 and removed to this court on March 24, 2006.

[2]Taking judicial notice of the court file in *Hilliard v. Credit Suisse*, 8:06CV285, I note that Hilliards sought to compel arbitration in that case by motion filed June 1, 2006, after they recalled signing the New Account Forms with the arbitration clauses. The proceeding initiated before the NASD by Hilliards involves the same claims they raised in Case No. 8:06CV285.

[3]*See* Filing [30], transcript of June 29, 2006 proceeding before Judge Cedarbaum.

On August 3, 2006, the Nebraska court granted [Credit Suisse's] motion to dismiss the Nebraska action in favor of the New York Action.[4]  <u>Hilliard v. Credit Suisse First Boston LLC</u>, No. 8:06 CV 285, 2006 WL 2239014 (D. Neb. Aug. 3, 2006)....

(Citations to the record omitted).

On June 29, 2006, Judge Cedarbaum held oral argument on Hilliards' MOTION TO DISMISS, COMPEL ARBITRATION, STAY OR TRANSFER VENUE [14].  Although she then reserved ruling on the motion, Judge Cedarbaum specifically noted that there was no reason why the parties should not exchange mandatory disclosures at that time.  In fact, counsel for Credit Suisse stated on the record that Credit Suisse "would like to proceed with that." Filing [30] at 18:13-14.  Accordingly, Judge Cedarbaum directed the parties to "promptly exchange mandatory voluntary disclosure" pursuant to Fed. R. Civ. P. 26(a)(1).[5] Filing [30] at 21:11-12.  A Stipulated Protective Order for the handling of confidential material was filed on September 8, 2006 by Judge Cedarbaum.  Filing [33].

---

[4]Judge Smith Camp dismissed Case No. 8:06CV285 "without prejudice to Plaintiffs' right to file appropriate counterclaims" in the litigation initiated by Credit Suisse against Hilliards in the Southern District of New York.

[5]Noting Credit Suisse's argument that Hilliards themselves have objected to responding to interrogatories and requests for production of documents served by Credit Suisse, the court can find no statement on the record that Judge Cedarbaum ever authorized or directed any discovery in this matter beyond the exchange of initial disclosures.  The court rejects Credit Suisse's argument (at Filing [61], p. 4 of 9) that Judge Cedarbaum ordered "that the bar on ordinary discovery would lift" when the dispositive issues raised in the Nebraska proceeding were resolved, automatically allowing the parties to conduct discovery without complying with Fed. R. Civ. P. 26(f), without any discovery plan, and without any case management order in effect.  Since this case was not exempt from Civil Rule 16.1 of the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York, I interpret Judge Cedarbaum's comment to mean that, after the dispositive matter was resolved in Nebraska, counsel could take the steps necessary to provide the information required by Rule 26(f) so that the court could enter the "mandatory scheduling order required by Fed. R. Civ. P. 16(b)."  Civil Rule 16.1.

On October 3, 2006, in accordance with Judge Cedarbaum's directive, Hilliards delivered to Credit Suisse approximately 250 documents consisting of 3,200 pages, identified the documents they would be utilizing to prepare their claims and/or defenses in this matter, and provided an index of those documents.  Filing [52], Declaration of William G. Dittrick.  Credit Suisse, however, provided only:  (a) the March 3, 2005 engagement letter between Credit Suisse and defendants, (b) "the written contract that underlies Credit Suisse's claims" (presumably the August 19, 2005 Trade Confirmation) and (c) a Form 10-Q for the quarterly period ended September 30, 2005 evidencing Charter's purchase of the preferred shares.  Filing [62-2], Affidavit of Gideon A. Schor at ¶ 8.

It appears that Hilliards attempted to conduct discovery in the NASD arbitration proceeding, eventually filing a Motion to Compel Discovery against Credit Suisse. The NASD proceeding was stayed in November 2006 pending the panel's decision on the issue of arbitrability.  The stay was further extended on January 2, 2007 pending this court's ruling on Hilliards' Motion to Compel Arbitration.  Thus, the arbitrator declined to consider the discovery dispute and dismissed Hilliards' discovery motion without prejudice.

## II.  LEGAL ANALYSIS

### A.  Motion to Compel Rule 26(a)(1) Disclosures

On June 29, 2006, with the concurrence of Credit Suisse, Judge Cedarbaum directed the parties to exchange initial disclosures pursuant to Fed. R. Civ. P. 26(a)(1).  Judge

Cedarbaum was fully aware of Hilliards' position that the matter should be referred to arbitration. Rule 26 then[6] provided, in relevant part:

**(a)    Required Disclosures; Methods to Discover Additional Matter.**

**(1)    Initial Disclosures.** Except in categories of proceedings specified in Rule 26(a)(1)(E), or to the extent otherwise stipulated or directed by order, a party must, without awaiting a discovery request, provide to other parties:

(A) the name and, if known, the address and telephone number of each individual likely to have discoverable information that the disclosing party may use to support its claims or defenses, unless solely for impeachment, identifying the subjects of the information;

(B) a copy of, or a description by category and location of, all documents, data compilations, and tangible things that are in the possession, custody, or control of the party and that the disclosing party may use to support its claims or defenses, unless solely for impeachment;

(C) a computation of any category of damages claimed by the disclosing party, making available for inspection and copying as under Rule 34 the documents or other evidentiary material, not privileged or protected from disclosure, on which such computation is based, including materials bearing on the nature and extent of injuries suffered[.]

\* \* \* \*

These disclosures must be made at or within 14 days after the Rule 26(f) conference unless a different time is set by stipulation or court order, or unless a party objects during the conference that initial disclosures are not appropriate in the circumstances of the action and states the objection in the Rule 26(f) discovery plan. In ruling on the objection, the court must determine what disclosures–if any–are to be made, and set the time for disclosure. Any party first served or otherwise joined after the Rule 26(f) conference must make these disclosures within 30 days after being served or joined unless a different

---

[6]An amendment to Rule 26(a)(1)(b) became effective on December 1, 2006, requiring parties to disclose "electronically stored information" rather than "data compilations." The Advisory Committee Notes to the 2006 revision advise:

Subdivision (a). Rule 26(a)(1)(B) is amended to parallel Rule 34(a) by recognizing that a party must disclose electronically stored information as well as documents that it may use to support its claims or defenses. The term "electronically stored information" has the same broad meaning in Rule 26(a)(1) as in Rule 34(a). This amendment is consistent with the 1993 addition of Rule 26(a)(1)(B). The term "data compilations" is deleted as unnecessary because it is a subset of both documents and electronically stored information.

time is set by stipulation or court order.  A party must make its initial disclosures based on the information then reasonably available to it and is not excused from making its disclosures because it has not fully completed its investigation of the case or because it challenges the sufficiency of another party's disclosures or because another party has not made its disclosures.

Credit Suisse now characterizes Hilliards' Motion to Compel as a "waste of time and resources," Filing [61] at p.2, and complains that Hilliards' seeking to enforce Judge Cedarbaum's directive is "inconsistent" with their motion to compel arbitration.  *See* Filing [70], 18:5-21.

The court first considers the proposition that Credit Suisse has fully complied with Judge Cedarbaum's directive and with Rule 26(a)(1).  Rule 26(a)(1) disclosures

> are designed to accelerate the exchange of basic information and "help focus the discovery that is needed, and facilitate preparation for trial or settlement." *See* Advisory Committee Notes to 1993 Amendments to Fed. R. Civ. P. 26(a). Initial disclosures should provide the parties "with information essential to the proper litigation of all relevant facts, to eliminat[e] surprise, and to promot[e] settlement." *Windom v. FM Industries, Inc.*, 2003 WL 21939033 (D. Neb. 2003) (quoting *Rolscreen Co. v. Pella Prods. of St. Louis, Inc.*, 145 F.R.D. 92, 94 (S.D. Iowa 1992))....
>
> In short, the Rule 26(a)(1) disclosure requirements should "be applied with common sense in light of the principles of Rule 1, keeping in mind the salutary purposes that the rule is intended to accomplish.  The litigants should not indulge in gamesmanship with respect to the disclosure obligations." *See* Advisory Committee Notes to 1993 Amendments to Fed. R. Civ. P. 26(a). *See also Fitz, Inc. v. Ralph Wilson Plastics Co.,* 174 F.R.D. 587, 589 (D.N.J. 1997) (Rule 26 disclosure requirement should be applied with common sense). Counsel who make the mistake of treating Rule 26(a)(1) disclosures as a technical formality, rather than as an efficient start to relevant discovery, do their clients no service and necessarily risk the imposition of sanctions.

*Sender v. Mann*, 225 F.R.D. 645, 650 (D. Colo. 2004).

Credit Suisse insists that it has produced or described "all documents, data compilations, and tangible things" that are now in its custody, or control and subject to disclosure under Fed. R. Civ. P. 26(a)(1) by identifying three witnesses, producing three documents, and reiterating its claim that it has sustained damages in excess of $2 million. Based on its disclosures, one must conclude that Credit Suisse does not intend to use any other documents, data compilations or tangible things that are now in its custody or control to support its claims or defenses–unless solely for impeachment. Pursuant to Fed. R. Civ. P. 37(c)(1), "[a] party that without substantial justification fails to disclose information required by Rule 26(a) ..., is not, unless such failure is harmless, permitted to use as evidence at a trial, at a hearing, or on a motion any witness or information not so disclosed." This provision has been characterized as an "automatic" sanction, to be applied unless the offending party's failure to disclose was "substantially justified" or if the failure was "harmless." *See generally* 8A Charles Alan Wright, Arthur R. Miller & Richard L. Marcus, *Federal Practice and Procedure* Civ. 2d § 2289.1 (Westlaw 2007). The court seriously doubts that Credit Suisse intends to limit the use of information now in its custody or control to three witnesses and three documents and finds that Credit Suisse has not complied with Judge Cedarbaum's order or with Rule 26(a)(1).

The court also rejects Credit Suisse's suggestion that Hilliards obtain the information that Credit Suisse should have provided pursuant to Rule 26(a)(1) by serving interrogatories, requests for production of documents and/or by deposition. The number of interrogatories

and depositions that may be taken is limited by Rules 30(a)(2)(A) and 33(a),and it would be unfairly prejudicial to require Hilliards to use their limited number of depositions and interrogatories to obtain information that should have been voluntarily disclosed by Credit Suisse many months ago pursuant to Rule 26(a)(1).

The court finds that Credit Suisse has not complied with the requirements of Fed. R. Civ. P. 26(a)(1) and that its failure to timely disclose **all** information in its possession, custody or control that it may use to support its claims or defenses was not substantially justified.  It remains to be seen whether the failure was "harmless."  In any event, and at this stage of the litigation, I find that the Motion to Compel Rule 26(a) Disclosures [50] should be granted.

Since Credit Suisse has already had over six months to compile the information required by Rule 26(a)(1), it will be required to serve supplemental disclosures on or before **Monday, May 7, 2007**.

### B.   Motion to Compel Arbitration [14]

On or about May 30, 2006, Hilliards initiated arbitration of their claims against Credit Suisse before the NASD.  The NASD proceeding was stayed on January 2, 2007 pending the district court's decision on the matter of arbitrability, as the Arbitrator found that the parties' agreement was silent on the question of who should decide arbitrability.[7]  "The

---

[7]The January 2, 2007 Order appears at #14 in a demonstrative exhibit prepared by defense counsel for the March 19, 2007 oral argument.  The exhibit was distributed to the court and to opposing counsel but was not offered in evidence.

question whether the parties have submitted a particular dispute to arbitration, i.e., the '*question of arbitrability*,' is 'an issue for judicial determination [u]nless the parties clearly and unmistakably provide otherwise.'" *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83, (2002) (quoting *AT&T Tech., Inc. v. Communications Workers*, 475 U.S. 643, 649 (1986) (emphasis added)); *see also Sadler v. Green Tree Servicing, LLC*, 466 F.3d 623 (8th Cir. 2006). In this instance, the parties' documents do not clearly and unmistakably provide that issues of arbitrability are not for judicial determination. The court will, therefore, decide the issue of arbitrability.

"[Q]uestions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration." *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)." In this regard, "[s]ection 2 of the [Federal Arbitration Act ("FAA")] provides that written arbitration agreements 'shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of *any* contract.'" *Doctor's Associates, Inc. v. Casarotto*, 517 U.S. 681, 686 (1996) (quoting 9 U.S.C. § 2; emphasis by Supreme Court); *see also Barker v. Golf U.S.A., Inc.*, 154 F.3d 788, 790 (8th Cir. 1998), *cert. denied*, 525 U.S. 1068 (1999). Thus, "[b]efore a party may be compelled to arbitrate under the [FAA], the district court must engage in a limited inquiry to determine whether a valid agreement to arbitrate exists between the parties and whether the specific dispute falls within the scope of that agreement." *Houlihan v. Offerman & Co., Inc.*, 31 F.3d 692, 695-96 (8th Cir. 1994) (citing *Daisy Mfg. Co. v. NCR Corp.*, 29 F.3d 389, 392 (8th Cir. 1994)). "The

court is to make this determination by applying the 'federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the Act.'" *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.,* 473 U.S. 614, 626 (1985). The court must stay the proceeding and compel arbitration if the court determines that the parties' dispute falls within the scope of a valid arbitration agreement. *Houlihan*, 31 F.3d at 696; 9 U.S.C. §§ 3 & 4.

Thus, when reviewing an arbitration clause, the court asks only (1) whether there is a valid arbitration agreement and (2) whether the particular dispute falls within the terms of that agreement. *Faber v. Menard*, 367 F.3d 1048, 1052 (8th Cir. 2004); *Affiliated Foods Midwest Coop., Inc. v. Integrated Distrib. Solutions, LLC*, 460 F. Supp. 2d 1068, 1071 (D. Neb. 2006).

> The party resisting arbitration bears the burden of demonstrating the motion to compel arbitration should be denied. *Green Tree Financial Corp.-Alabama v. Randolph,* 531 U.S. 79, 92 (2000). A motion to compel arbitration "should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *United Steelworkers of America v. Warrior & Gulf Nav. Co.,* 363 U.S. 574, 582-83 (1960); *Lyster v. Ryan's Family Steak Houses, Inc.,* 239 F.3d 943, 945 (8th Cir. 2001). Federal policy favors arbitration, and there is a strong presumption of arbitrability. "The [FAA] preempts all state laws that reflect a policy disfavoring arbitration and which are designed specifically to limit arbitration." *Id.*

*Affiliated Foods*, 460 F. Supp. 2d at 1071-72 (parallel citations omitted).

The parties agree that the New Account Form contains an arbitration clause. The issue presented is whether this dispute over the sale of the preferred shares of Charter stock falls within the scope of the arbitration clause contained in the New Account Form.

-11-

Credit Suisse contends that the August 19, 2005 Trade Confirmation is the only contract at issue in this action. Neither it nor the February 2005 agreement contains an arbitration clause. Thus, it is argued that the April 2005 New Account Form, which contains the arbitration clause, does not apply to this dispute because the New Account Form governs only brokerage activity. The language cited to support this assertion is found in section VII of the New Account Form, signed in April 2005, where each of the defendants[8] provided certain financial and employment information, specifically:

WHAT ARE THE SOURCE OF FUNDS FOR THIS ACCOUNT?   * * *   ☒ Investment Proceeds   * * *

According to Credit Suisse, it is shielded from the arbitration requirement in this instance because the defendants did not designate the sale of the preferred shares as a source of funds for their accounts. Thus, Credit Suisse contends the August 19, 2005 Trade Confirmation Agreement falls outside the scope of the arbitration clause. Filing [70], 12:7-15:16.

The plain language of the arbitration clause, however, does not confine itself to the defendants' brokerage agreements with Credit Suisse. It provides, "It is agreed that ***any*** controversy between us arising out of ***your business or*** this agreement shall be submitted to arbitration..." (Emphasis added).

The scope of an arbitration agreement is given a liberal interpretation, with any doubts resolved in favor of arbitration. *Lyster v. Ryan's Family Steak Houses, Inc.*, 239 F.3d 943, 945 (8th Cir. 2001). An order compelling

---

[8]The form considered by the court was signed by defendant Stuart Gilbertson on April 6, 2005. (Filing [16], Declaration of Stuart Gilbertson, Ex. A). In May 2006, Russell Hilliard, Elizabeth Hilliard, and Karyn Hilliard filed declarations (Filings [17], [18] & [19]) stating that in April 2005 they, too, opened investment accounts with Credit Suisse through Bob Sierens in Chicago by executing new account forms "similar, if not identical" to Gilbertson's form.

arbitration "should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *Id.* at 945 (quoting *AT & T Techs., Inc. v. Comm. Workers of Am.*, 475 U.S. 643, 650 (1986) (quoting *Warrior & Gulf Navigation Co.*, 363 U.S. [574, 582-83 (1960))].

*MedCam, Inc. v. MCNC*, 414 F.3d 972, 975 (8th Cir. 2005); *see also Berkley v. Dillard's Inc.*, 450 F.3d 775, 777 (8th Cir. 2006).

The record shows that the parties began an ongoing business relationship in February 2005, evidenced by the February 2005 agreement, the April 2005 New Account documents, and the August 2005 Trade Confirmation. The sale of the preferred shares to Credit Suisse was the primary – and perhaps only – objective of that business relationship.  In the context of this record, I construe the arbitration provision included in the New Account Form/New Account Agreement as a condition of Hilliards' continuing to do business with Credit Suisse. Credit Suisse itself drafted the very broad language requiring the arbitration of any controversy between Credit Suisse and Hilliards arising out of Hilliards' business **or** the New Account Agreement.  The arbitration clause does not limit itself to brokerage activities, but instead encompasses **any** controversy arising out of Hilliards' "business" with Credit Suisse. Based on the plain language of the document, which was drafted by Credit Suisse, I find that the issues raised in this lawsuit fall within the scope of the arbitration clause contained in the New Account Forms executed by the defendants.

Finally, Credit Suisse has raised the argument that Hilliards waived the right to compel arbitration by invoking the jurisdictional power of the court, i.e., by filing suit

-13-

against Credit Suisse in Nebraska, and acting inconsistently with that right. Hilliards explain that they did not recall signing the New Account Agreement with the arbitration clause until after they filed suit in Nebraska. Shortly after locating the documents containing the arbitration provision, Hilliards sought to compel arbitration, filing the pending motion in this case on May 30, 2006, and a similar motion in *Hilliard v. Credit Suisse* on June 1, 2006.

A party may be found to have waived the right to seek arbitration if the party "'(1) knew of an existing right to arbitration; (2) acted inconsistently with that right; and (3) prejudiced the other party by these inconsistent acts.'" *Kelly v. Golden*, 352 F.3d 344, 349 (8th Cir. 2003) (quoting *Ritzel Commc'ns, Inc. v. Mid-Am. Cellular Tel. Co.*, 989 F.2d 966, 969 (8th Cir. 1993)).

> A party acts inconsistently with its right if it "'[s]ubstantially invoke[s]' the litigation machinery' before asserting its arbitration right" by failing to request a stay and fully adjudicating its rights. *Ritzel*, 989 F.2d at 969 (quoting *E.C. Ernst, Inc. v. Manhattan Constr. Co.*, 559 F.2d 268, 269 (5th Cir. 1977)). The actions must result in prejudice to the other party for waiver to have occurred. *Stifel, Nicolaus & Co. v. Freeman*, 924 F.2d 157, 158-59 (8th Cir. 1991) (holding there was no prejudice and therefore no waiver, even though the moving party acted inconsistently by initiating the suit). Prejudice results when, *inter alia*, parties use discovery not available in arbitration, when they litigate substantial issues on the merits, or when compelling arbitration would require a duplication of efforts. *Stifel*, 924 F.2d at 159.

*Kelly v. Golden*, 352 F.3d at 349; *see also Affiliated Foods*, 460 F. Supp. 2d at 1072.

I find that even if Credit Suisse is able to prove that Hilliards acted inconsistently with their right to arbitrate, Credit Suisse has not, and cannot, prove that it has been prejudiced. Although large amounts of time and money have been spent litigating procedural and

-14-

jurisdictional issues, this case is in a very early stage of litigation on the actual merits of the parties' dispute. Credit Suisse has, to date, provided virtually no discovery to Hilliards and is in no position to complain of Hilliards using discovery not available in arbitration, or that compelling arbitration would require a duplication of efforts.

## ORDER

For the reasons discussed above,

**IT IS ORDERED:**

1.   Defendants' Motion to Compel Rule 26(a) Disclosures [50] is granted. Credit Suisse shall serve supplemental initial disclosures that are in full compliance with Fed. R. Civ. P. 26(a)(1) no later than **Monday, May 7, 2007.** Failure to do so may result in the imposition of sanctions pursuant to Fed. R. Civ. P. 37.

2.   Defendants' Motion to Compel Arbitration [14] is granted, as follows:

     a.   All claims are stayed pending the completion of arbitration in accordance with the Federal Arbitration Act and under the procedures of the National Association of Securities Dealers, Inc.

     b.   The parties shall electronically file written status reports concerning the progress of the arbitration proceeding. The first status report shall be filed by **August 1, 2007.** Subsequent status reports are due every 90 days thereafter until all arbitration proceedings are completed.

Pursuant to NECivR 72.2, a party may appeal this order by filing a "Statement of Appeal of Magistrate Judge's Order" within ten (10) days after being served with the order. The party shall specifically state the order or portion thereof appealed from and the basis of the appeal. The appealing party shall file contemporaneously with the statement of appeal a brief setting forth the party's arguments that the magistrate judge's order is clearly

erroneous or contrary to law.[9]  The filing of a statement of appeal does not automatically stay the magistrate judge's order pending appeal.  *See* NECivR 72.2(d).

**DATED April 25, 2007.**

**BY THE COURT:**

**/s F.A. Gossett**
**United States Magistrate Judge**

---

[9]The standard of review is governed by whether the matter is "dispositive" or "non-dispositive."  *See* 28 U.S.C. § 636(b).  I can find no binding authority as to whether a motion to compel arbitration is comparable to the dispositive matters designated in § 636(b)(1)(A), and there is a split of authority on the issue.

   ***Non-Dispositive***.  In *Herko v. Metro. Life Ins. Co.*, 978 F. Supp. 141 (W.D.N.Y. 1997), the court decided that, because the parties must return to the district court to have an arbitration award confirmed, modified or vacated under 9 U.S.C. §§ 9-11, the court retains jurisdiction even during arbitration.  Accordingly, an order to stay proceedings and compel arbitration was non-dispositive.  *Herko*, 978 F. Supp. at 142 n.1.  *Accord All Saint's Brands, Inc. v. Brewery Group Denmark, A/S*, 57 F. Supp. 2d 825 (D. Minn. 1999) *SDD99, Inc. v. ASA Int'l, Ltd.*, Case No. 06-CV-6089, 2007 WL 952046 (W.D.N.Y., March 29, 2007); *Jackman v. Jackman*, Case No. 06-1329, 2006 WL 3792109 (D. Kan., Dec. 21, 2006).  *See also Taylor v. Ash Grove Cement Co.*, Case No. CV03-1509, 2004 WL 1418783 (D. Or., June 22, 2004) (citing *Torrance v. Aames Funding Corp.*, 242 F. Supp. 2d 862, 865 (D. Or. 2002)).

   ***Dispositive***.  In *Flannery v. Tri-State Div.*, 402 F. Supp. 2d 819 (E.D. Mich. 2005), the district court reasoned that a magistrate judge's order compelling arbitration terminated the litigation in district court and transferred the case to another forum; therefore, the court viewed such an order as the functional equivalent of a dispositive matter, which was reviewable *de novo* pursuant to 28 U.S.C. §636(b)(1)(B).  In *Amisil Holdings Ltd. v. Clarium Capital Mgmt. LLC*, Case No. C-06-5255, 2006 WL 3949332 at *1 n.1 (N.D. Cal.), the magistrate judge noted the split in authority and "in an abundance of caution" elected to issue a report and recommendation on a motion to compel arbitration.

   I am inclined to agree with the cases following *Herko*; however, if the district court determines that the Motion to Compel Arbitration is a dispositive matter, then my decision on that point will be reviewable *de novo* pursuant to NECivR 72.3.